I'm Michael Asabio, counsel appointed for Mohamed Dalalli on this appeal. I did not represent Mr. Dalalli at his trial, so thus my gleaning of this record is from the same record before you. I would like to have ten minutes for direct and five for rebuttal. If at any time you have had enough of me, please just say so and I will sit down. Thank you, Judge. As both I think this court in Mince's and the Supreme Court in Ferretta point out, this is all about the Anglo-American Enlightenment manifesting itself in our principles of law and justice. The right of a person to represent themselves or to have counsel or to have their choice of counsel. In this particular case that is running up against Mr. Dalalli's experience growing up in a rather harsh autocratic regime that facially is a civil law regime and thus doesn't have jury trials. But even with the concept of having a judge, things are different in terms of the way he might expect the rule of law to be administered. But in any event, we have a curious timeline here and I think I'd like to clarify because I think it became confused in the record. This case had been pending for quite some time. In sort of mid-January of 2015, the case was set for trial. Mr. Dalalli says no, I don't want a jury trial. I want to plead guilty. The judge, I think, is concerned about this. Well hold on, given at this late stage, let's go ahead and put the jury in, hear opening arguments, and then see at the end of the day how do you still feel about this. And both Mr. Rahe for the United States and Mr. Springstead for Mr. Dalalli laid out some fairly good cases on behalf of their clients. But at the end of the day, Mr. Dalalli said, I want to plead guilty. Went through the examination. Did you do this? Did you do this? Correct. Correct. Correct. Fairly simple one-word answers. Starting in February, probation office begins to come in and start examining him for preparation for his sentence report. At the second interview in mid-March, Dalalli says no. All this was wrong. I'm innocent. I don't want you as my attorney. His attorney, Mr. Springstead, appropriately immediately files a motion saying, we've had this breakdown in communication. He thinks I'm working with the government. I'm not working in his best interest. Doing what pretty much any attorney in this situation would have to do. This comes on in April for a hearing on this motion. The day before this hearing, the pre-sentence report is released. The initial one is released. The judge conducts the hearing, using as a standard, at least the right word saying, you know, examination for just cause. But the way it seems to progress is more reminiscent of what you might see in a 2255 hearing or in a hearing on a motion to withdraw a guilty plea, which would seem inherent in the motion to withdraw because Mr. Springstead, Dalalli's counsel, says, he's saying he didn't do this, that he was pushed to do this, but that's not the standard at this point to judge whether he either gets new counsel, he gets to retain counsel, or he gets to represent himself. Again, in this sense, I apologize for not coming up with a flow chart because these things seem to all branch out. And this issue of just cause depends on what you were trying to do. If you're bringing in a new counsel, you have a right to have counsel of your choice, that's pretty much a near absolute right, a structural issue, except that the court can examine that to see, is there some problem here? Such as, is there a potential conflict of interest? Such as you see in organized crime cases where they try and bring in new counsel who may be inappropriately connected to the parties. Then you have the issue of, I don't want this guy. He's my appointed counsel or he's my retained counsel. I don't want him anymore. The cause factor there is, well, okay, you don't want him. The presumption is, you don't have to have him. What you then can, what the court can look at, is there some improper or facial problem here that makes this just a frivolity, that you are wasting our time? The issue then comes with self-representation. Alright, you have a near absolute to represent yourself if you so wish. Albeit the court can do at least a cursory examination, per Ferretta, and per the Benchbook for U.S. District Judges, do you really know what you're getting into? Is this decision knowing and voluntary, intelligent and voluntary on your half? In each of those cases, that presumption exists for counsel of your choice, or new counsel, or to represent yourself. The court, out of the box, and again, I'm not, while this is under an abuse of discretion standard of review, I think the court has, you know, has good intentions here. But it's looking at it in the wrong way. It first says, well, you know, this really is buyer's remorse. Because, you know, you looked at the pre-sentence report, didn't like what it said, and that's why you now want to go do all of this. Although, as the record shows, the pre-sentence, see this motion was made back in March. The pre-sentence report wasn't completed and submitted until the day before the hearing on the motion to withdraw as counsel. So, so that stands out. There is, that wasn't part of it. Then the question comes up, you know, the judge then says, well, you know, you're objecting to what happened. You know, you're saying all of a sudden this, you were being pressured to this, you were trying to keep your family together, but that's contradicted by the guilty plea colloquy. Well, I don't want to tell you how to present your argument, but there were several rulings and decision points along the way. The request to change counsel and you're kind of lumping everything together here, almost stream of consciousness. If, just to see if there was an abuse of discretion, if we go back, we would need to put things in factual context. So with respect to particular decisions and motions and what was transpiring at the time and what the judge said was the basis for his decision, I'm, I'm not getting too much out of this to be able to figure out if exactly why you're saying the judge abused his discretion unless you put your argument in a factual context. I apologize, Your Honor. Guilty plea in January. He tells counsel in March, I want a new lawyer. I don't trust you. And then in March, the lawyer files motion to withdraw his counsel. In April is the hearing on the motion. The day before the hearing, the first percentage report comes out. Judge denies the motion to withdraw. Then, going into, I believe, June is the motion to withdraw the guilty plea. I think I think I don't mean to interpret Judge Clay's question, but I think he's asking you what underlies each of your arguments in the case, not what happened when. Is that, am I getting that right? Okay. I believe so. Okay. Good, thank you. Although the timeline is important because the district judge says your timing is bad, the underlying problem with the change of counsel is as set forth in counsel's motion in March, that he doesn't trust me anymore. Can I ask you a question about that? Two questions about that. First, which is the more significant of your issues? Whether the district court failed to question Mr. Delali about self-representation or whether he made the wrong decision, in your opinion, about having Mr. Springstead stay on the case? I see that they are conflated. When he leaves Mr. Springstead on the case, then I would consider, I would say that was incorrect. There was sufficient here to let Mr. Springstead off the case, because now you're putting him in a difficult ethical situation. Mr. Springstead is protected because he's now acting pursuant to judicial order, but he now has to argue, essentially, in the motion with motion to set aside the guilty plea, that he malpracticed the case by forcing his client. So that's real bad there by itself. I don't think so. I mean, he never took the position in the motion to withdraw the guilty plea that Mr. Delali was misled by his advice. I mean, he does contend that he, you know, didn't understand what he was doing and so on and so forth. Yes, ma'am, but that's the problem. How can he represent his client as saying, this all has to change because my lawyer acted improperly? Does he get up and say, well, judge, I did all these things wrong representing my client. He can't. That's why new counsel is necessary to make these representations, just as if this was a 2255. Here's what I see in this transcript, okay, of the first hearing on the motion to withdraw. I see kind of a non-serious request to represent himself on the part of the defendant, which the district court made a judgment about. That's not really the thing the defendant wanted to pursue. Now, whether that was right or wrong, we can evaluate that. And then the other part of it is the district court, he's already represented by the Federal Defender's Office, and so he does not have an absolute right to go out and choose a lawyer. I mean, the court is going to appoint a lawyer for him, right? Yes, he had, well, he would, if his counsel, the guy he says that he had retained, if that man had shown up, then he would have a near-absolute right to have that person's custody. He doesn't claim he actually retained anybody. As I understand the transcript, he claims that somebody talked to a guy whose full name he does not know, who said he'd be there in court that morning. Yes, but if, and I'm guessing this is because he's locked up and somebody in his family or some friend is trying to retain counsel. But that's that one area where you have your own counsel lined up. The middle area is if you don't like your appointed counsel. You're right, you don't have a choice as to who gets appointed to represent you. But if you've had a breakdown in the relationship between your current counsel, that can proceed. The choice then becomes the court has to either appoint new counsel for him or let him represent himself. One final thing, I've prolonged you past... Sorry, no. I apologize for not being clear. I look at this and I see he made certain statements under oath during his change to plea. He's making directly contrary statements on this occasion. I think you can tell from page 18 that the district court flat-out didn't believe what he was asserting. Certainly he made very serious allegations that if believed, they're pretty outlandish, but if believed would be a basis for permitting withdrawal. But the district court wasn't required to accept Mr. Dallale's representations, was it? Especially since previously he had said under oath something directly different. Yes, but the issue of good cause in withdrawal of counsel and either proceeding pro se or new counsel is whether that relationship between attorney and client is broken. Not whether the client is doing something bad. He didn't believe it was actually broken and he believed the defendant had been hanging out in the jail with people who told him how to game his case or it just didn't seem logical to the district court in view of the history of the case. He didn't have to accept at face value what in the motion to withdraw the plea in the 2255, the judge can make that finding a fact and determine, I don't believe. We've never said anything about specific findings of fact in the context of motions to withdraw, have we? Because we don't. We have to look at, is the relationship broken? Whether he, whether the client is being credible, whether the defendant is being credible in his it's whether or not he can now work with or trust his counsel. And conversely, are you going to put this poor counsel, speaking on behalf of defendant counsel, are you going to put this poor counsel having to work with a client who said these things? But our issue is not whether we take pity on the lawyer or not. I haven't done anything else to it. I think we should, but yes, but anyway, but no, it is, it's about, but it's about the ability of the defendant's and his rights to counsel that he trusts. And here, I think it is clear that relationship was dead. Even if the district judge thought this was, didn't believe him and thought this was a really bad idea by Mr. Dallale, that is Mr. Dallale's choice. It's one of those fundamental areas. As this court has said, it's all, it's Kantian. It's the respect for the individual. We will also respect your right to make your bad choices. I just have one question. You made a reference a couple of times to Section 2255, and it seems to me that at least some of the complaints that Mr. Dallale has here may properly be pursued in a 2255 action as opposed to the matters before us. Would you agree with that? Just very briefly, because your time has expired. Well, given how the district court ruled regarding the motion to withdraw, which has a much lower and different standard, I would say his, if before the same judge, his chance for a 2255 is quite low. But that doesn't apply here. In the 2255 context, he could claim ineffective assistance of counsel, he could testify, and the trier of fact would decide whether the stuff Mr. Dallale was alleging, in fact, was true. Yes, and in effect he's done that here. But the standard is different, not whether, in effect, we have a Strickland violation. The question here is, is the relation between the attorney and client so broken that it just can't go forward to represent him on the issues as he feels appropriate? And this does relate back to what the position we're putting the defense counsel in, which is he has to argue about it, argue himself. Thank you. Okay. Thank you, counsel. You'll have your rebuttal time. We'll hear from the government next. Good morning, Your Honors. My name is Tim Verhey. I represent the United States on this appeal, and I was also trial counsel below. And since most of the questions appear to focus on the right to counsel issue, let me focus on that myself, unless you have concerns about the other issues raised. Judge Yonker, when he got this motion, which is Record 129, heard first from defense counsel, Mr. Springstead, that Dallale was unhappy with him. And specifically at the end of that very short motion, Mr. Springstead said, Dallale also told me that he plans to hire his own attorney. So Mr. LoSavio is right. The motion's filed about three weeks before the hearing on the motion to withdraw his counsel. And so no appearance is filed by anybody in that three-week period. The judge takes the bench, armed only with the defense counsel's motion about Mr. Dallale being unhappy with his lawyer. The judge does make a finding that is, I think, somewhat important here, that this case has been around since 2013, and the first time I'm hearing about Mr. Dallale being dissatisfied with Springstead is after he's pled guilty when the pre-sentence process is going along. So that, I think, is one of the factors that the Mack case tells the district judge to look at, the timing of the motion. It's not all by itself a winner for the government, but it does, I think, lay the basis for the district court being a little suspicious, because so much time had elapsed between the indictment in 2013 to the 2015 hearing to replace counsel. At that point, there's still a couple of months, though, before the sentencing hearing, correct? Right. Three months. Three months. Right. So if a lawyer had showed up, there would have been plenty of time for that to happen, and I don't think it would have delayed anything. And I'm not going to argue to you that it would have been a delay for appointed counsel or retained counsel to show up. And you see Judge Yonker pretty much saying that on I.D. page 1006. He said, if there's a new lawyer ready, willing, and able at this hearing, I probably would tip the scales in favor of Mr. Dallale and let this person come in. But the fact of the matter is nobody appeared. Nobody filed an appearance before for three weeks. Nobody filed an appearance for the three months afterwards saying, hey, I've been retained. Please let me in. As we all know, nobody appeared at the hearing. And Dallale shows up saying, I don't even know who this guy's name is. He uses a couple of different names. He doesn't have a phone number about how to reach the guy. He says his office is by the railroad track somewhere in Grand Rapids. And I know this is not a matter of the record, but nobody with a name like that is in the bar journal anywhere. And I've never heard of him. So what is a judge supposed to do in that situation? I think that the case law, even under Gonzales-Lopez, says the district court has discretion to decide if they're going to stop everything and allow even retained counsel to step in. Gonzales-Lopez does say there's a right to hire your own attorney. So says the Supreme Court. But it also goes on to say that this right is circumscribed in several important respects, page 144 of that decision. And this court, specifically Judge Gibbons, in 2014, decided a case called U.S. v. Pago, where the same MAC test was applied, where somebody wanted to hire an attorney and replace court-appointed counsel. Well, so if we're using the MAC test, and it's clear here that Judge Yonker went through that step by step, if you look at pages 1, excuse me, ID number 997 through 1001, you can see that the judge no fewer than five times by my count tried to get Delali or somebody to say, what is your problem with your lawyer right now? And each time Delali said, I'm not guilty, they keep putting pressure on me, and I should have been able to show that the bank records didn't show I had the $30,000. All of these statements relate back to whether he's guilty or not. But as we all know, he'd already pled guilty and adamantly requested to plead guilty right on the first day of trial, even when Judge Yonker, I think, bent over backwards to try and talk him out of it to say, you're really not going to do yourself much good by pleading guilty this late in the game. What about this whole issue of the total breakdown in relationship between Mr. Delali and Mr. Springstead that's alleged by Mr. Delali? Because he didn't make these allegations, I know, at the time of the guilty plea, but there are all these allegations now, and they may have surfaced after spending some time among other inmates, but that Springstead has pressured him about terrorist groups and to plead guilty and all this other sort of stuff. It's not working for him, it's working for the government. To some extent, he is working. Well, maybe, but I think Judge Yonker was entitled to not give any credibility to that, because, first of all, he did say, I heard nothing about this from the day of the indictment up through the pre-sentence report, including seeing Mr. Springstead work for the defendant right in front of me, defending him at trial. He made a finding that Springstead did a good job pointing out during cross-examination and during his trial presentation, although it was truncated, he was defending this guy. So I think Judge Yonker appropriately said, I just don't believe that statement that the Dalali is making, that Springstead's not fighting for him and he's on the government side and he's putting pressure on me to plead guilty. In addition to that, of course, Judge Yonker said, I really explored that at the time of his guilty plea. Are you under any pressure? Because it was a first day of trial guilty plea, I think he spent more time than we typically see district judges do to say, I know it's a pressure-packed situation, but you need to make this decision freely and voluntarily. Are you doing it freely and voluntarily? And Dalali told him, yes, and he gave an explanation. I'm hoping that if I cooperate, maybe things will go better for my wife. It just didn't pan out, but he completely denied being under any kind of pressure at the time of his guilty plea, and then all of a sudden, after that pre-sentence process gets off the ground, now he says he's feeling all this pressure and Springstead is not working for him and not fighting for him. Why plead guilty? Pardon me? At what point did his wife plead guilty? Somehow from this record, we know that it had happened by that time. And I apologize, I didn't look that up, but I think it was about a month or so later. Later than what? His guilty plea? Yes. What happened was the case was severed because she suffered some emotional trauma and had to be checked into a hospital right before trial, so the judge severed the case and went off and had her assessed for mental stability. And so when she got back and was found to be competent, then she entered a guilty plea. So if memory serves, it was around 60 days after his guilty plea and prior to, I think, his decision that he didn't want Springstead anymore. So he did raise a bunch of issues at this hearing. I don't think Judge Yonker heard enough to draw the conclusion that this guy was really raising unambiguously the right to represent himself. You can see the entire exchange occurs on ID page 995, where Judge Yonker comes out and says, I understand you want a new lawyer. And then Delali says, can I represent myself, Your Honor? And then Judge Yonker says, well, let me start with whether you want a new lawyer. Your preference at this point, you think, is to represent yourself as opposed to having a lawyer? The defendant, yes, Your Honor, I have an attorney, and then goes on to talk about this mystery attorney. So to me, that's the definition of an ambiguous request. And I think it was appropriate for Judge Yonker to say this is not a real legitimate request to represent himself. At the end of the day, I think what Judge Yonker decided was Mr. Delali was unhappy with both alternatives facing him. He didn't want to go to trial. He said that on the first day of trial.  And then when the pre-sentence report is being written and he sees that he's going to face a sentence, he doesn't like that result either. And so I think ultimately no other lawyer could have done any different under those circumstances because he just was unhappy with the two choices facing him. So at the end of the day, I think the judge did address all of the factors under MAC. Ultimately, I think the thing that swung the decision against Delali was he never could point to anything other than he was then saying, I'm not guilty, to say there's a conflict. So in light of all that, I think the district court's decision was well within its discretion and asked that you uphold it. I'm prepared, if anybody has questions, to move on to the other issues. I'm hoping that my brief was adequate on those. At some point, it comes to the judge's attention that the defendant lied about having all of his money in his bank account. And I suppose it would be appropriate for the court to take those misrepresentations into account in assessing the defendant's credibility on all the other issues, request to change counsel, breakdown in the attorney-client relationship and all that. When in the proceedings did it come to the court's attention that the defendant had made misrepresentations about his money in his bank account and how might that have affected the court's assessment of the defendant's credibility? I think you're right to say that that's something else the judge could draw on because he did plead guilty to a fraud charge, which at bottom is lying to get money from somebody. And you can see it, I.D., page 65, during the guilty plea colloquy. Judge Yonker says, the government says that you had this $30,000 in these Lebanon bank accounts. And then he goes on to say, and it was money or assets. I mean, you understood if you told the government on the forms that you had $30,000 in the bank, you realized they weren't going to give you the benefits, right? And Delali says, correct, and then goes on to say, and I didn't disclose it. So, you know, this is, at bottom, a false statements case where the defendant pled guilty under oath to lying to get these benefits. And so I think that plays part of the role, too, in addition to what the judge actually saw during the guilty plea and trial. So I think that appropriately played a role also. I think my goal here was to defend what the judge did as far as withdrawing counsel. I'm prepared to rely on our briefs as to the other issues, unless the court has any concerns I can address. There was something at some point where, and I can't, I'm losing track of when and how that came about, where Mr. Delali took the position that he thought he had $30,000 in bank accounts. It turned out he didn't. And at what point was that shared with anyone? I mean, I knew it somehow. In that passage in ID pages 997 through 1001, where Judge Yonker's asking him what's going on right now, that's a conflict, one of the things Delali says is, I never had this $30,000, you know, my wife's father worked in Lebanon, and so that's why they... That came from an allegation of the indictment. Well... Or the factual basis. Oh, yes. Everybody was on notice from the indictment that the $30,000 was the primary lie that the government was relying on. It's right there in the conspiracy charge, count one, that says he had the $30,000 and he... And he later claimed before Judge Yonker that he didn't in fact have it, that he thought he had it at one point, but he didn't in fact have it. Right. He admitted to it during his guilty plea at the withdrawal of counsel hearing. He started backing off that to say, well, I actually never did, and they couldn't prove it. I don't have the opportunity to show the fact that I didn't have this $30,000, and that's when it comes back to I didn't do it. So... So as to not having this $30,000 and trying to remember the elements of the crime, but at least one portion of one element was the concealment of substantial assets, if I'm correct. So he didn't have any substantial assets, this $30,000. Well, I say he did because we were prepared to call witnesses that said he said under oath, I have $30,000 in these bank accounts because, not to get too far in the weeds here, he bought a store and the store burned down, and so he made an insurance claim saying I want my insurance for the store that burned down, and so did the person that sold the store who retained the structure. And so the insurance lawyer, I think properly said, well, I see you're on public assistance. How did you get the money to buy this store in the first place? And he says under oath at this deposition, oh, I've got $30,000 in these bank accounts in Lebanon. Okay, and then they delve into that, and so that plus records that we found led us to believe on the prosecution side, well, we can show that he had this money and didn't disclose it to the welfare people, and that made a big difference because if you have that much money, you don't get the benefits. So, yeah, I was prepared to prove that beyond a reasonable doubt. I had to to find him guilty. We didn't really get into that in the trial before his guilty plea, but Judge Yonker on page 181 said, excuse me, page 65 said, you had the $30,000 and you didn't disclose it, and he knew that would have made a big difference, and he says that's right. So that's where that came from. Okay. Thank you very much, Your Honors. Thank you, Counsel. Mr. LoSavio. Yes, Judge. And just as Mr. Ferhey had his proofs ready, Mr. Springstead set out in his opening argument was ready to controvert all of those factors. And, again, I thought Judge Yonker was maybe on point by saying, why don't you just let's start this trial so you can see what's going on, because I don't know, because I would think he doesn't understand what Mr. Delawley is doing anyway. The core issue comes back, your right to counsel, and whatever say we let you have in your choice of counsel. The judge was looking at the test, I guess, in Perini, Linton v. Perini, which I'll set out, that, you know, is this appropriate? I think he misconstrued the issue of timeliness, because he said, well, you know, this case has been pending a long time, it's been two months, but now you're asking it. The issue of timeliness I put forward deals with, is this request coming in such a way as it does not disrupt these proceedings? I think the reason I read the transcript is Judge Yonker's reference to that. It doesn't mean he doesn't know. I mean, he doesn't talk about the time until sentencing, but he's using that as one of the many things he thinks undercuts the assertion that there's been a complete breakdown in the lawyer-client relationship. Okay. I mean, isn't that a fair reading of the transcript? The issue there would be when the breakdown comes isn't of an impact on the case unless it has an effect on the proceedings. If it in some way impacts the public administration... I agree it would have been appropriate for Judge Yonker to have considered that. I just don't think it was... I don't think the... I don't think... I don't agree that considering the amount of time that had passed was irrelevant to the proceedings. I think it was relevant to whether he believed what Mr. Delali was telling him or not. If that's... But that then begins to move into the context, again, was the guilty plea valid? Are you just making up these things in order to get a new lawyer? Or is there some real problem? Did your lawyer, in fact, pressure you to do this? Delali was under a huge amount of pressure, and he said it. You know, I'm trying to do this to help my wife. I want to get back to my kids. They have four children, three of whom were born here, so they're U.S. citizens. If he is denaturalized, well, and that process goes to its natural conclusion, that would also apply to his wife. So now they have the awkward situation. They get deported. They can either take their three youngest kids, or they can leave them here.  Perhaps he can go back to Lebanon. I don't know. But that's part of these considerations that he wants us to look at in terms of what he was saying and what he did, and is it valid. So in any event, 16 weeks until the sentencing hearing, if he'd gotten new counsel or was given self-representation, he could have been ready for it. And the fact that he even knew to ask for self-representation would, I think, indicate that he is beginning to become familiar with the American system of justice, perhaps from his He'd be a particularly inappropriate person to represent himself if anything you claim about his understanding of the American criminal justice system is correct. Yes, which may have come out on the FREDA examination, but I think, as you alluded to earlier, time in incarceration seems to have an interesting effect on one's knowledge of at least the words of law. But who can say that that happens? He does look at the credibility. The judge looks at this. Is that adequate? He laid out the facts, but his conclusion from them, I think, was incorrect. Give Mr. Dallale, like in the Pluckett case, Pritchett case, that came out last month that we cited in the 28-J letter. In that case, this guy went through three appointed counsel. The judge said, finally, no. You can represent yourself. Now, there the for cause examination shows there's no foundation here for why you keep getting new counsel, other than you don't like what they're saying. You have a choice now. This will constitute a waiver of counsel, and good luck with that. So we would submit that as what should have happened to Mr. Dallale. Or there should have been a FREDA examination to see if, in fact, he was knowing enough about the procedures to make a conscious and intelligent decision to represent himself, as opposed to simply saying what somebody told him back in the lockup. So thank you. Okay, thank you, counsel, for your arguments today. And, Mr. Lasavio, I note that you have taken this case on pursuant to the Criminal Justice Act. That's a benefit to the system at large, and obviously to Mr. Dallale, and we thank you for agreeing to take the case on in that capacity. With that, again, thank both counsel for arguments today, and the case will be submitted.